IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| IN RE: | CASE NO. 09-07657 (ESL) |
| JESUS SANTIAGO MALAVET<br>    Debtor | CHAPTER 7 |
| NOREEN WISCOVITCH RENTAS<br>    Plaintiff | ADV. PROC. NO. 15-00006 (ESL) |
|     vs. | |
| TRM, LLC as successor in interest of FIRST BANK PUERTO RICO, by and through OPERATING PARTERS CO.<br><br>    Defendant | |

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment and Memorandum of Law in Support Thereof on the Pleadings* (Docket No. 13) filed by the Chapter 7 Trustee (hereinafter referred to as "Trustee" or "Plaintiff") and the *Opposition to Plaintiff's Summary Judgment and Cross Motion for Summary Judgment* (Docket No. 25) filed by TRM, LLC (hereinafter referred to as "Defendant" or "TRM"). The Trustee seeks to avoid a pre-petition mortgage recorded over property of the estate pursuant to 11 U.S.C. §544(a)(1) and the Puerto Rico Mortgage Law, 30 L.P.R.A. §§2001 *et seq.* The Trustee alleges that TRM's mortgage was not properly perfected pre-petition as required by Article 57 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §2260 ("Mortgage Law") because there was a missing link in the chain of title holders, namely the Deed of Donation had not been registered, that impeded its recordation. TRM argues in its *Opposition to Plaintiff's Summary Judgment and Cross Motion for Summary Judgment* that: (i) the Trustee is time barred pursuant to 11 U.S.C. §546 to file the present complaint under 11 U.S.C. §544; (ii) the chain of ownership was followed because both owners of the real property; namely the Debtor and his mother Mrs. Malavet Rodriguez appeared in the Deed of Mortgage; (iii) the Property Registrar as part of his or her duties evaluated the

-1-

mortgage deed, deemed that it complied with the Mortgage Law and allowed for its recordation; and (iv) TRM has a special protection under Article 105 of the Mortgage Law, 30 L.P.R.A. §2355 as a third party who in good faith acquired a recorded real right ("tercero registral") pursuant to Article 105 of the Mortgage Law which prevents the avoidance of the mortgage lien by the Trustee. Also before the court is TRM's *Amended Motion to Dismiss* (Docket No. 24) and the Trustee's *Reply to Defendant's Opposition to Motion for Summary Judgment and to Amended Motion to Dismiss* (Docket No. 30). The Trustee argues that the statute of limitations set forth in 11 U.S.C. §546(a) is inapposite and that the applicable statute of limitations is determined pursuant to 11 U.S.C. §108(a) and Article 1863 of the Puerto Rico Civil Code ("Civil Code"). TRM in its *Reply to Plaintiff's Opposition to TRM's Amended Motion to Dismiss* (Docket No. 38) contends that the Trustee should have filed an amended complaint pursuant to Fed. R. Civ. P. 15 since she now claims that the avoidance action is based on Articles 110 and 151 of the Mortgage Law. TRM also argues that Article 1863 is inapplicable to Trustee's claim. For the reasons stated below, TRM's *Amended Motion to Dismiss* is granted. Thus, both Plaintiff's *Motion for Summary Judgment* and Defendant's *Cross Motion for Summary Judgment* have become moot.

<u>Jurisdiction</u>

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(K). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

<u>Factual and Procedural Background</u>

On September 12, 2009, Jesus Santiago Malavet (the "Debtor") filed a voluntary Chapter 11 Bankruptcy Petition (Lead Bankruptcy Case No. 09-07657[1]). The Debtor included in Schedule A-Real Property- the real estate property in controversy and described the same as follows:

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 09-07657(ESL).

-2-

"[p]roperty located at Urb. Roosevelt, 470 Ave. Hostos, San Juan, PR 00918. Consists of 2 story concrete residential building on a 313 sq mts. lot. Appraisal of $375,000 was based on similar sales in community in previous years. Actual devaluation in real property is 15% or $56,250.00. Debtor owns the property but Maria Malavet, [his] mother, has [a] life [e]state ("usufructo") over the property. The commercial space is vacant."

The Debtor listed the nature of its interest on the property as "JTWROS." The Debtor listed the current value of the property in the amount of $318,750.00 and the secured claim is included in the amount of $141,536.11. The Debtor in Schedule D- Creditors Holding Secured Claims listed FirstBank of Puerto Rico as a fully secured creditor of a first mortgage over a residential property located at Urb. Roosevelt, 470 Ave. Hostos, San Juan in the amount of $141,536.11. The Debtor listed that the value of the residential property was in the amount of $318,750. On October 20, 2009, FirstBank Puerto Rico filed proof of claim #5-1 in which it listed that it was a secured creditor (based upon a first mortgage) in the amount of $141,536.11.

On March, 2, 2011, the case was converted to Chapter 7 (Lead Case, Docket No. 208). The Order converting the case to Chapter 7 was set aside on May 10, 2011 (Lead Case, Docket No. 229). On May 16, 2011, RNPM, LLC (as the "Purchaser/Transferee/Asignee") filed a *Notice of Transfer of Claim Pursuant to FRBP Rule 3001(e)(2) Waiver of Opportunity to Object and Request for Notice Pursuant to FRBP 2002* informing that it had purchased FirstBank's claim pursuant to a Purchase and Sale Agreement dated December 22, 2010 (Lead Case, Docket No. 232).

On September 6, 2011, the court ordered the case to be reconverted to Chapter 7 for Debtor's failure to adequately address the reasons for not having filed a disclosure statement and plan (Lead Case, Docket No. 263). On September 7, 2011, the *Notice of Re-Appointment of Interim Trustee and Approval of Blanket Bond* was filed whereby Noreen Wiscowitch-Rentas was appointed as Interim Trustee (Lead Case, Docket No. 264). On October 4, 2011, the Debtor filed several amended schedules, including Amended Schedule A- Real Property- in which the Debtor included in the description of the real property in controversy that the property at Urb. Roosevelt, 470 Ave. Hostos was the Debtor's principle residence and that, "[t]he $318,750.00 is

divided as follows: $159,375.00 dollars life estate ("usufructo") [and] $159,375.00 dollars Debtor's ownership." (Lead Case, Docket No. 270). Schedule D was not amended.

Subsequently, on August 7, 2012, the Debtor filed an *Urgent Motion Requesting Determination by Trustee* requesting the Trustee to express her intent to abandon the property or to attempt to invalidate the impending judicial sale (Lead Case, Docket No. 345). On August 8, 2012, the court granted the Debtor's *Urgent Motion Requesting Determination by Trustee*, and ordered the Trustee to reply (Lead case, Docket No. 347). On August 12, 2012, the Trustee filed her *Response to Order and Response to Debtor's Motion for Determination* (Lead Case, Docket No. 349). On September 24, 2012, the Trustee filed the *Notice of Private Sale of Estate's Interest in Property Free and Clear of Liens* informing that she will sell the real property in controversy at a private sale to JIMF Asset Management Corp. in the amount of $250,000.00. The real estate property taxes owed to CRIM amount to $6,580.88 as of September 20, 2012. In the Notice, the Trustee disclosed that: "[t]he mortgage owed to FirstBank of Puerto Rico is approximately $141,536.11. However, the Trustee reserves the right to dispute the validity of the lien." The notice also stated that the closing costs are estimated in the amount of approximately $5,500 for notary stamps and cancellation of deeds and the realtor fee is in the amount of $10,000. The Trustee will also pay the remaining value of the usufruct held by Debtor's mother, Mrs. María Milagros Malavet Rodríguez (Lead Case, Docket No. 365). The value of the usufruct was not disclosed or estimated. On October 19, 2012, the Debtor filed an *Objection to Private Sale of Hostos 470* premised upon the reasonability of the offer as well as the estate's interest in the property (Lead Case, Docket No. 369).

On January 31, 2013, a *Notice of Transfer of Claim Pursuant to FRBP Rule 3001(e)(2) Waiver of Opportunity to Object and Request for Notice Pursuant to FRBP 2002* was filed by TRM (as the "Purchaser/Transferee/Assignee") informing that it had purchased RNPM, LLC's claim in a Purchase and Sale Agreement dated July 17, 2012 (Lead case, Docket No. 389).

On February 1, 2013, a hearing was held to consider the Trustee's *Notice of Private Sale of Estate's Interest In Property Free and Clear of Liens* and Debtor's *Objection to Private Sale*

*of Hostos 470* in which the following material uncontested facts were established: (i) the property at Hostos #470 is part of the bankruptcy estate in this case and is subject to an usufruct on behalf of María Milagros Malavet Rodríguez; and (ii) apart from the claimed exemption on Hostos #470, the Debtor has no other pecuniary interest in the real property (Lead Case, Docket No. 396). At the hearing, the court established that the parties must move the court on the applicable procedure to calculate the usufruct on the real property. The court after considering the testimony of witnesses, the pleadings filed and the exhibits admitted, found that $275,000 is a reasonable value for the Hostos #470 property under the circumstances (Lead Case, Docket No. 396).

On February 1, 2013, the Trustee filed adversary proceeding 13-00021 to obtain court approval to sell the real estate property pursuant to 11 U.S.C. §363(f) and (h). On November 14, 2013, this court rendered its *Opinion and Order* in which it denied the Defendant's motion for summary judgment on the pleadings and also denied the Plaintiff's motion for summary judgment because neither of the parties provided sufficient material uncontested facts that warrant judgment as a matter of law. The court concluded that: "…the Trustee has failed to meet its burden of showing that Section 363(f) is applicable in the instant case, particularly as to the applicability of any of the enumerated conditions in Section 363(f) to the facts of this particular case. At this juncture, the court has no information regarding the value of the Defendant's usufruct (or how the usufruct is calculated) and whether the Trustee plans on filing an adversary proceeding to invalidate the mortgage lien." The court also established that: "[a]n usufruct is a type of lien and is not a form of co-ownership in real property, thus section 363(h) is inapplicable. An usufructuary of a certain real property is not a co-owner having an undivided interest." (Adversary Proceeding #13-00021, Docket No. 17, pgs. 14, 16).

On August 28, 2014, RNPM, LLC filed an *Amended Motion Requesting That Stay be Lifted* as to the real property in controversy, given that the secured creditor is not adequately protected. RNPM, LLC disclosed that the loan matured on September 1, 2009 and that the amount owed as of August 15, 2014 was $225,492.26 plus $176 pertaining to legal costs (Lead

Case, Docket No. 430). On September 16, 2014, the stay was lifted upon respondent's failure to oppose the motion for relief of stay filed by RNPM, LLC[2] (Docket No. 434).

Subsequently, on January 13, 2015, the instant adversary proceeding was filed by the Trustee seeking to avoid FirstBank's mortgage lien pursuant to 11 U.S.C. §§544 and 506 and the Mortgage Law. On January 16, 2015, the Court ordered and scheduled a preliminary pretrial and scheduling conference on May 29, 2015 (Docket No. 4).

On February 8, 2015, TRM filed a *Motion for Dismissal* premised upon failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). TRM argued that the mortgage was recorded in the Property Registry and that it is protected by Article 105 of the Mortgage Law, 30 L.P.R.A. §2357 (Docket No. 9). On March 2, 2015, the Trustee filed the *Opposition to Motion to Dismiss* arguing that Defendant has failed to evince that it is a third party protected by Article 105 of the Mortgage Law and Defendant's mortgage was improperly recorded as it lacked the successive chain of title requirement ("falta de tracto sucesivo") in conformity with Article 57 of the Mortgage Law, 30 L.P.R.A. §2260, thus the same may be avoided (invalidated) pursuant to 11 U.S.C. §544 (Docket No. 10).

On March 17, 2015, the Court ordered a status conference which was scheduled for May 29, 2015 in which the parties to both adversary proceedings 15-00006 and 13-00021 shall come prepared to discuss how the two (2) proceedings are related (Docket No. 11).

On May 22, 2015, the Trustee filed a *Motion for Summary Judgment and Memorandum of Law in Support* Thereof in which she argues the following: (i) as of the date of the commencement of the Chapter 11 case, the Deed of Donation had not been recorded at the Property Registry nor pending qualification since its entry had expired due to failure to correct/cure a defect within the allotted time (sixty (60) days); (ii) Defendant's mortgage was improperly recorded by the Property Registrar because the Deed of Donation was an essential link in the chain of title for the inscription (recordation) of the Deed of Mortgage; (iii) thus, the

---

[2] The court notes that at this point in time, the claim belonged to TRM since it had purchased the claim on July 17, 2012 from RNPM, LLC (lead case, Docket No. 389).

Trustee seeks to avoid the pre-petition mortgage recorded over property of the estate pursuant to 11 U.S.C. §544(a)(1); (iv) Defendant's mortgage fails to comply with Article 57 of the Mortgage Law because a mortgage (or any other right) may only be registered in the Property Registry if there is a successive chain of title before the same is recorded. Thus, the right of the person who grants a certain right over a real property must be referred to in the transaction and must appear previously recorded in order for a particular right (such as a lien) to be recorded in the Property Registry; (v) the Debtor is the titleholder of the real property, but Mrs. Malavet Rodriguez appears as the owner of such property according to the Property Registry; (vi) it is uncontested that as disclosed in the Mortgage Deed, the Debtor constituted the mortgage over the real property. Mrs. Malavet Rodriguez appeared in the Mortgage Deed to consent to the mortgage as a holder of the usufruct and to mortgage her usufruct rights; (vii) "[t]he Trustee, as representative of Debtor's estate, holder of dominion and title over the [p]roperty and hypothetical judicial lien holder over the [p]roperty, seeks to rectify the inaccuracy at the Registry of Property created by the erroneous inscription of Defendant's mortgage inasmuch as it impairs the right of unsecured creditors to an equal distribution of Debtor's assets. Article 51 of the Mortgage Law, 30 L.P.R.A. §2502 provides the mechanism for the rectification of errors committed by the Registrar;" and (viii) the Defendant is not protected by Article 105 of the Mortgage Law, 30 L.P.R.A. §2355 because the Deed of Donation pursuant to which the Debtors acquired title was filed and pending qualification by the Property Registrar when the Debtor constituted the mortgage in favor of the Defendant. The Deed of Donation was not recorded due to a defect which was notified but was never corrected (Docket No. 13). On May 22, 2015, the Trustee also filed the *Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 14).

On May 22, 2015, the Trustee filed a *Motion for Conversion of Preliminary Pretrial and Scheduling Conference to Status Conference* requesting that the pretrial be converted to a status conference and/or be held in abeyance pending the resolution of the Defendant's motion to dismiss, the Trustee's opposition thereto and the Trustee's motion for summary judgment

(Docket No. 15). On May 27, 2015 the court granted the motion filed by Plaintiff requesting conversion of preliminary pretrial and scheduling conference to status conference (Docket No. 16). On May 29, 2015 a status conference was held in which the court granted TRM fourteen (14) days to file an amended motion to dismiss incorporating the legal arguments presented in court. The court also granted TRM fourteen (14) days to file its opposition to Plaintiff's motion for summary judgment. The Trustee was granted thirty (30) days to move the court. The pretrial hearing was continued without a date (Docket No. 22).

On June 12, 2015, TRM filed its *Amended Motion to Dismiss* pursuant to Fed. R. Bankr. P. 12(b)(1) and (b)(6) premised upon the following (i) the Trustee's complaint based upon lien avoidance under 11 U.S.C. §544 is time barred pursuant to 11 U.S.C. §546(a) because the present complaint was filed more than four (4) years after the order of relief was entered and more than three (3) years after the Trustee was appointed on September 7, 2011; (ii) "[t]he limitations period in 11 U.S.C. §546(a) may be equitably tolled when a trustee, despite the exercise of due diligence, fails to timely bring an avoidance action due to fraud, misrepresentation or extraordinary circumstances beyond the trustee's control. However, if the court finds that the trustee has not acted diligently, the limitation period will not be equitably tolled;" (iii) the mortgage deed was duly registered as a matter of state law because the same complied with Article 57 of the Mortgage Law, 30 L.P.R.A. §2260; (iv) TRM as a third party has a special protection pursuant to Article 105 of the Mortgage Law, 30 L.P.R.A. §2355, that prevents the Trustee from avoiding the mortgage lien; and (v) the original mortgage lien holder was FirstBank Puerto Rico. Then, the note was transferred to Operating Partners on behalf of RNPM, LLC during the month of May 2011. Finally, Operating Partners transferred the account and note to TRM during the month of January 2013. At the time the note was acquired, TRM trusted the publicity and the correctness of the Registry of the Property, which disclosed that the mortgage deed was registered (Docket No. 24).

On June 12, 2015, TRM filed its *Opposition to Plaintiff's Summary Judgment and Cross Motion for Summary Judgment* in which it incorporated all the arguments and statements that

were discussed in the *Amended Motion to Dismiss* (Docket No. 24) in support of its cross motion for summary judgment (Docket No. 25). On June 29, 2015, the Trustee filed a *Request for Extension of Time to Oppose Cross-Motion for Summary Judgment and to Present Reply to Opposition to Summary Judgment* within fourteen (14) days and the same was granted on July 7, 2015 (Docket Nos. 26 & 28).

On July 13, 2015, the Trustee filed her *Reply to Defendant's Opposition to Motion for Summary Judgment and to Amended Motion to Dismiss* arguing as follows: (i) that the Trustee's claim is not time barred under 11 U.S.C. §546 because, "[t]he statute of limitations found in Section 546 applies to claims brought under Section 544—where the trustee succeeds to a claim belonging to a creditor—but it does not apply to actions in which the trustee succeeds to a claim belonging to the debtor. See Global Crossing Estate Representative v. Winnik, 2006 U.S. Dist. Lexis 53785, *21-22 (Bankr. S.D.N.Y. 2006);" (ii) when the cause of action is one that the debtor could have pursued, the action is brought timely is the same is brought within the period provided under 11 U.S.C. §108(a). The applicable statute of limitations is found in Article 1863 of the Civil Code, 31 L.P.R.A. §5293 that provides that: "real actions with regard to real property prescribe after thirty (30) years;" (iii) the factual averments in the complaint are sufficient to establish a claim under Articles 110 and 151 of the Mortgage Law; namely the avoidance of Defendant's mortgage via rectification of the Registry's entries; (iv) "[a]lthough in the complaint, the Trustee did not indicate that this claim was brought under Articles 110 and 151 of the Mortgage Law, said omission, in and of itself, cannot serve as grounds to disregard the applicable statute of limitations;" (v) the registration of Defendant's mortgage failed to comply with Article 57 of the Mortgage Law because the principle of successive chain of title required that the recordation of bare ownership in favor of the Debtor and the usufruct in favor of Mrs. Malavet Rodriguez be registered before the Deed of Mortgage could gain access to the Property Registry; (vi) there is a *juris tantum* presumption that the contents of the Property Registry are correct, however this does not mean that an incorrect entry cannot be rectified just because the Registrar reviewed and passed judgment upon the documents. The Property

Registry does not by itself create or take away rights. Thus, Articles 110 and 151 of the Mortgage Law provide a mechanism for a party in interest to request the rectification of the entries in the Registry; and (vii) Defendant does not meet all of the requirements established under Article 105 of the Mortgage Law, 30 L.P.R.A. §2355. At the time, TRM acquired the note secured by the mortgage granted by the Debtor, the Property Registry disclosed Mrs. Malavet Rodriguez as the titleholder of dominion over the property. Thus, TRM does not comply with the good faith requirement under Article 105. Moreover, had the Defendant exercised the due diligence, it would have found that it was acquiring a note secured by a mortgage that was constituted by a person that did not appear at the Registry as the owner of the mortgaged property (Docket No. 30).

On July 31, 2015, TRM filed a *Motion Requesting Extension of Time to Respond to "Reply to Defendant's Opposition to Motion for Summary Judgment and to Amended Motion to Dismiss"* and the same was granted on August 6, 2015 (Docket Nos. 32 & 33). On August 14, 2015, TRM filed *a Second Motion Requesting Brief Extension of Time to Respond to "Reply to Defendant's Opposition to Motion for Summary Judgment and to Amended Motion to Dismiss"* and the court granted the second extension (3 days) on August 21, 2015 (Docket Nos. 37 & 39).

On August 17, 2015, TRM filed its *Reply to Plaintiff's Opposition to TRM's Amended Motion to Dismiss* contending that: (i) Article 1863 of the Civil Code, 31 L.P.R.A. §5293, does not apply to the Trustee's claim. In order for Article 1863 to be applicable it must regard a "real action" related to "real property." Commentator Puig Brutau has explained that Article 1863 applies to the following actions: (1) action by the owner to recover real property from the holder or possessor of the real property; (2) action to deny servitude; (3) action to demand the recognition of a right to use another's real property; (4) real action by annuitant against the estate charged; and (5) action to petition inheritance; and (ii) in the alternative, the Trustee should have filed an amended complaint pursuant to Fed. R. Civ. P. 15 (Docket No. 38).

On November 6, 2015, a status conference was held in which the court ordered as follows: "Considering that on this date the court has ordered plaintiff in AP 13-00021 to show

cause why the case should not be dismissed for lack of prosecution; and that plaintiff in this case has prayed the court to hold in abeyance any decision regarding the consolidation of both cases (See Dkt #41). The court now grants plaintiff 21 days, after a decision on the dismissal request in AP 13-00021 is made, to move the court. Upon failure to move the court, the AP may be dismissed" (Docket No. 44). Subsequently, on December 23, 2015, the court entered an Order in AP 13-00021, determining that any decision in said adversary proceeding will be held in abeyance pending a decision in the instant adversary proceeding. The court ordered Plaintiff to move the court within 21 days (Docket No. 47). On January 14, 2016, the Trustee filed her *Response to Order* requesting the court to continue the present adversary proceeding and dispose of the pending motions for summary judgment (Docket No. 49).

The matter before the court is whether the instant complaint in this adversary proceeding should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), applicable in adversary proceedings through Fed. R. Bankr. P. 7012(b). The issue the court must first resolve is whether the Trustee's complaint premised upon lien avoidance under 11 U.S.C. §544 is time barred under the provisions of 11 U.S.C. §546(a). This issue was brought forth by TRM in its *Amended Motion to Dismiss*. The outcome of this issue is determinative of whether the court will need to dispose of the Plaintiff's motion for summary judgment and TRM's cross motion for summary judgment.

Applicable Law and Analysis

*Fed. R. Civ. P. 12(b)(6)*

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748

F.2d 774, 779 (2nd Cir.1984); <u>Citibank, N.A. v. K-H Corp.</u>, 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". <u>Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta)</u>, 464 B.R. 86, 90 (Bankr.D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> at 556. The <u>Twombly</u> standard was further developed in <u>Ashcroft v. Iqbal</u>, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". <u>Peñalbert-Rosa v. Fortuño-Burset</u>, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 11 (1st Cir. 2011).

In <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step

two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr.D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

A statute of limitations defense may be brought forth in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). However, "for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. FDIC, 244 F. 3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F. 2d 590, 591 (1st Cir. 1989)). "Thus, granting a motion to dismiss based upon a statute of limitations defense is 'entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time barred.'" Marsh v. Levy (In re Levy), 416 B.R. 1, 6 (Bankr. D. Mass. 2009)(quoting LaChapelle v. Berkshire Life Ins. Co., 142 F. 3d 507, 509 (1st Cir. 1988)(citing Street v. Vose, 936 F. 2d 38, 39 (1st Cir. 1991); Kali Seafood, Inc. v. Howe Corp., 887 F. 2d 7, 9 (1st Cir. 1989)).

*Limitations on Avoiding Powers pursuant to 11 U.S.C. 546(a)*

In this adversary proceeding, TRM contends that the Trustee's complaint is time-barred by the statute of limitations pursuant to 11 U.S.C. §546(a). Section 546(a) applies to suits brought in reliance on the Trustee's avoiding powers. Section 546(a) provides:

> "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced, after the earlier of—
>     (1) The later of—
>         (A) 2 years after the entry of the order for relief; or
>         (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>     (2) the time the case is closed or dismissed." 11 U.S.C. §546(a).

"Actions or proceedings under section 544, 545, 547, 548 or 553 of the Bankruptcy Code may not be commenced after the earlier of the time periods set forth in subsection

546(a)(1) or (a)(2). Section 546(a)(1) provides that these avoidance actions must be commenced within two years from the entry of the order for relief. If a trustee is appointed or elected within two years of the entry of the order for relief, the trustee is afforded one additional year from the trustee's appointment or election to commence avoidance actions. If a trustee is not appointed or elected prior to the expiration of the initial two- year period, commencement of avoidance actions is time-barred, even if a trustee if subsequently appointed or elected in the case." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶546.02[2] (16th ed. 2015). If a case is converted from one chapter to another, the two years limitations period pursuant to Section 546(a)(1)(A) commences from the date of the original order for relief and not from the conversion date. See In re Mountaineer Bulk Servs. Inc., 2013 Bankr. Lexis 628, at *8-9 (Bankr. N.D. W. Va. 2013). Moreover, section 546(a) is the operative statute that limits the time a trustee has to commence an avoidance action as a representative of the estate. See Hirsh v. Harper (In re Colonial Realty Co.), 168 B.R. 512, 516-517 (Bankr. D. Conn. 1994) ("When the trustee asserts an avoidance action under §544(b) on behalf of the creditors of the estate, the limitation period fixed by §546(a) applies, not §108(a), which applies to actions asserted on behalf of the debtor"). The limitations provisions of 11 U.S.C. §§108(a) and 546(a) pertain to different causes of action; namely; section 546(a) limits the time a trustee has to bring forth an avoidance action as representative of the estate, and section 108(a) limits the time a trustee has to commence an action on behalf of the debtor. See In re Topcor, Inc., 132 B.R. 119, 126 (Bankr. N.D. Tex. 1991). The statute of limitations in section 546(a) not only applies to trustees appointed in Chapters 7, 11, 12 or cases, it also applies to debtors-in-possession and to trustees in a confirmed plan. See Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §9A:45 Vol. 2 (5th ed. 2015), p. 406. Thus, the debtor in possession in a Chapter 11 case is the estate representative with standing to bring avoidance actions within the two (2) year period from the petition date. Id. at 409.

In the instant case, the Debtor's voluntary Chapter 11 petition filed on September 12, 2009 constitutes the order for relief pursuant to 11 U.S.C. §§301(b) and 348(a). On March 2,

-14-

2011, the case was converted to a Chapter 7 (Lead case, Docket No. 208). On March 3, 2011, the Debtor filed a *Motion Requesting Relief from Conversion to Chapter 7* (Lead case, Docket No. 209) On March 4, 2011, Noreen Wiscovitch Rentas was appointed as interim trustee (Lead case, Docket No. 210). On April 10, 2011, the Chapter 7 Interim Trustee filed a *Motion for Entry of Order Holding in Abeyance the Appointment of Trustee Until Determination of the Motion to Reconsider Conversion to Chapter 7* (Lead Case, Docket No. 220). On April 25, 2013, the Court granted the Interim Trustee's motion requesting that her appointment be held in abeyance (Lead case, Docket No. 223). Thereafter, on May 10, 2011, a hearing was held in which the Court ruled as follows: "Order: 1. There being no opposition, the motion to set aside the order converting the case to ch. 7 is hereby granted. 2. Debtor cautioned as to the requirement to file timely monthly reports of operation. 3. Disclosure statement and ch. 11 plan shall be filed within 45 days" (Lead case, Docket No. 229). Subsequently, on September 6, 2011, the Court ordered the reconversion of this case to Chapter 7 (Lead case, Docket No. 263), for Debtor's failure to comply with the May 10, 2011 Order.

It is important to note that in a Chapter 7 case, the appointment of the trustee means the time when the position becomes permanent. If a trustee is not elected by the creditors, the interim trustee automatically becomes the permanent trustee at the time of the meeting of creditors. See 11 U.S.C. §702(d); Seals v. Abedi (In re Fort Worth Campbell & Assocs.), 182 B.R. 748, 750 (Bankr. N.D. Tex. 1995) ("Therefore, section 702(d) automatically causes the appointed interim trustee to become the permanent trustee"); Grella v. Zimmerman (In re Art & Co.), 179 B.R. 757, 762 (Bankr. D. Mass. 1995)("For the purpose of determining when a trustee becomes permanent, the meeting of creditors is considered to have been actually held when the debtor submits to an examination under oath"). Thus, the "interim trustee, who is appointed promptly after entry of the order for relief under section 701, automatically becomes the permanent trustee at the meeting of creditors pursuant to section 341, if creditors do not elect a trustee under section 702. Since trustee elections under section 702 are rare, the date of the section 341 meeting usually will be the date of appointment of the trustee for purposes of

section 546(a)(1)(B)" Alan N. Resnick & Henry J. Sommer, 5 <u>Collier on Bankruptcy</u> ¶546.02[2][a][i] (16th ed. 2015).

On September 7, 2011, the United States Trustee filed the *Notice of Re-Appointment of Interim Trustee and Approval of Blanket Bond* by which Noreen Wiscovitch Rentas was appointed as Interim Trustee (Lead Case, Docket No. 264). On September 19, 2011, the *Notice of Chapter Bankruptcy Case, Meeting of Creditor, & Deadlines* was entered and the same disclosed that the meeting of creditors was scheduled for October 11, 2011 (Lead Case, Docket No. 268). The meeting of creditors was continued on multiple occasions (Lead case, Docket Nos. 278, 285, 293, 308, 317, 320, 321 & 329). The last continuance was scheduled for June 22, 2012 and the upper right hand side of the docket discloses that: 341 meeting: 06/22/2012. Two (2) years from the entry of the Debtor's order for relief is September 12, 2011. Even if the first 341 meeting of creditors which was scheduled for October 11, 2011, would have been held on such date (which is not clear from the record), thus converting the appointment of the interim trustee to a permanent trustee appointment, it would fall outside of the two year period from the petition date. The Trustee, on September 24, 2012, which is more than three (3) years after the order for relief was entered, filed a *Notice of Private Sale of Estate's Interest in Property Free and Clear of Liens* (Docket No. 365) in which she disclosed that there is a mortgage lien held by FirstBank which will attach to the proceeds. The Trustee stated that she reserved the right to dispute the validity of the mortgage lien. Notwithstanding, the Trustee initiated an adversary proceeding on January 13, 2015 premised upon the Trustee's strong arm powers to avoid a mortgage lien pursuant to 11 U.S.C. §544(a)(1)[3] and 30 L.P.R.A. §2502 (Docket No. 13).  This adversary proceeding was initiated five (5) years and four (4) months after the order for relief was entered. Thus, this court finds that the commencement of avoidance actions by the Trustee are time-barred pursuant to section 546(a)(1)(A).

---

[3] The Trustee in the *Motion for Summary Judgment and Memorandum of Law in Support Thereof* refers to 11 U.S.C. §544(a)(2) but the argument is based on 11 U.S.C. §544(a)(1) (Docket No. 13, pgs. 4-5).

The Trustee's adversary proceeding was premised upon section 544(a)(1) and applicable nonbankruptcy law, in particular Mortgage Law.  Notwithstanding, the Trustee in her *Reply to Defendant's Opposition to Motion for Summary Judgment and Amended Motion to Dismiss* presented the following arguments: (i)  the action brought forth by the Trustee is one that the debtor could have brought, thus, the applicable statute of limitations is determined by 11 U.S.C. §108(a); (ii) the Trustee seeks to rectify an inaccuracy reflected in the Property Registry pursuant to Articles 110 and 151 of the Mortgage Law, 30 L.P.R.A. §§2360 and 2502; (iii) "[a]s the instant claim belonged to the Debtor, Section 546 is inapposite. Instead, the applicable statute of limitations is found in Article 1863 of the Civil Code, 31 L.P.R.A. §5293, which provides that '[r]eal actions with regard to real property prescribe after thirty (30) years.'"

*11 U.S.C. §108(a) Limitations Period*

Section 108(a) establishes the circumstances in which a trustee can bring an action which a debtor could have pursued by providing as follows:

> "(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief."

Section 108(a) refers to pre-petition causes of action which belong to the debtor and does not include causes of action which have been created by the Bankruptcy Code and which are subject to the limitations under section 546(a). See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶108.02 (16th ed. 2015) ("Section 108 makes clear that it refers to suits continued by the trustee, in the place of the debtor, in addition to those suits which are initiated postpetition. It is important to note, however, that periods of limitation for causes of action arising under the Code are separately governed by sections 546(a), 549(d) and 550(e)"); See also; In re Mahoney, Trocki & Associates, Inc., 111 B.R. 914, 920 (Bankr. S.D. Cal.

1990)(citations omitted) ("It is well settled in the Ninth Circuit that '§108(a) refers to pre-filing causes of action belonging to the debtor and not to a cause of action created by the Bankruptcy Code'"); Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., 417 F. Supp. 2d 212, 224 (D. Mass. 2006).

Section 108 is inapplicable to actions brought under the avoidance powers conferred to the trustee pursuant to section 544 which are subject to the limitations under section 546. Section 108 is inapplicable to the trustee's action under §544(a), in which the trustee asserts the status of a hypothetical judgment lien creditor. See Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., 417 F. Supp. 2d at 224 citing In re Dry Wall Supply, Inc., 111 B.R. 933, 935 n. 2 (D. Colo., 1990). Thus, when the trustee initiates a cause of action pursuant to 11 U.S.C. §544(a), he or she is standing in the shoes of a hypothetical lien creditor, and is not acting as a representative of the debtor. See In re Hansen, 114 B.R. 927, 932 (Bankr. N.D. Ohio 1990) ("…§108(a) cannot be utilized by the Trustee because he is not 'standing in the shoes' of the Debtor. Instead, his [c]omplaint is brought under §544(b), which gives a trustee the status of an actual unsecured creditor. Accordingly, §108(a) does not apply to extend the Trustee's time to file this action"). The trustee's avoiding powers, which must be employed using state substantive law are created by the Bankruptcy Code, meaning that these actions are not available to a debtor-in-possession or trustee outside a bankruptcy court. See In re Mahoney, Trocki & Assoc., Inc., 111 B.R. at 917-918.

In the instant case, the Trustee argues that the applicable statute of limitations is determined by §108(a) and Article 1863 of the Civil Code. Article 1863 of the Civil Code states as follows:

> "Real actions with regard to real property prescribe after thirty (30) years. This provision is understood without prejudice to the prescriptions relating to the acquisition of ownership or of property rights by prescription" 31 L.P.R.A. §5293.

-18-

The thirty (30) year prescription period afforded by Article 1863 of the Civil Code regards to the prescription regarding the acquisition of ownership or of property rights by prescription. See González v. Roque, 47 P.R.R. 492 (1934); Heirs of Marrero v. Santiago, 74 P.R.R. 763 (1953). The thirty (30) year prescription period established in Article 1863 of the Civil Code is inapplicable to requests for rectification of the Property Registry based upon discrepancies between recordable rights that exist on the Property Registry and the legal reality outside of the Property Registry.

The Trustee argues that the action to rectify the inaccuracy that is reflected in the Property Registry is an action that the debtor could have brought pursuant to the Mortgage Law (superseded by the Real Property Registry Act) as a debtor and not as a hypothetical lien creditor or a debtor-in-possession under 11 U.S.C. §544(a)(1) since the 2 year limitation period has already lapsed. The Trustee's argument is based upon the alleged error of the Property Registrar which consisted in recording the mortgage deed (lien) in which the Debtor appeared as the titleholder of the real property which was being mortgaged before recording the deed of donation which conferred title of the real property to the Debtor. Thus, the Property Registry does not conform with Article 57 of the Mortgage Law (Article 17 of the Real Property Registry Act[4]) because it lacks the successive chain of ownership (chain of title, "tracto sucesivo"), meaning that the Debtor must appear as title holder of the real property before recording the mortgage deed in which he appears as titleholder. Article 57[5] of the Mortgage Law provides:

---

[4] The court notes that the Mortgage and Property Registry Act of 1979 was superseded on December 8, 2015 by Act Number 210 which is titled, "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico" (Real Property Registry Act of the Commonwealth of Puerto Rico) (*translation ours*). No official translation in the English language of this Act is available as of the entry of this Opinion and Order. Article 322 of the Real Property Registry Act of the Commonwealth of Puerto Rico ("Real Property Registry Act") establishes that this act shall take effect ninety (90) days after its approval.

[5] The court notes that the equivalent section in the Real Property Registry Act of Article 57 of the prior Mortgage Law is Article 17 which is very similar to Article 57. Article 17 of the Real Property Registry Act states the following in the Spanish language:

"Para inscribir documentos por los que se declaren, transmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previamente inscrito el derecho de la

"In order to record documents that declare, convey, encumber, modify or extinguish dominion and other real rights on real property, the right of the person who grants them or in whose name the referred transactions or contracts are granted must appear previously recorded.

Registration shall be refused if the right is recorded in the name of a person other than the one who is granting the conveyance or lien. However, resolutions and judgments referred to in §§2761-2777 of this title may be recorded without the previous registration requirement." 30 L.P.R.A. §2260.

The Trustee seeks to rectify the inaccuracies reflected in the Property Registry which is a claim that belongs to the Debtor and may be corrected pursuant to Articles 110 and 151 of the Mortgage Law:

Article 110 of the Mortgage Law provides:

"Inaccuracy of the Record is understood to mean any disagreement on recordable rights which may exist between the Record and the legal reality outside the Registry. Rectification of the Registry may be requested by the titleholder of dominion or real right which is not recorded, which is recorded erroneously, or which is impaired by the inaccurate entry.

Rectification shall be made according to the following rules:

(a) When the inaccuracy arises from a legal decision on real property which has not had access to the Registry, a correction shall be made: First, by recording the correct title, if possible; second, by resumption of the successive transaction in accordance with the provisions of this subtitle; and third, by court order.
(b) When the inaccuracy is due to the cancellation of a recorded or noted right, correction shall be made by means of a cancellation, in accordance with the provisions of this subtitle.
(c) When the inaccuracy occurs because of a defect of error in an entry, the Record shall be corrected according to what is established in this subtitle.
(d) When the inaccuracy is based on falsification, annulment or a defect in the title motivating the entry, and, in general, for any other reason not previously specified, the correction shall require the consent of the titleholder affected by the inaccuracy, or when this is lacking a court order shall be required.

In cases where judicial correction must be sought, the suit must be filed against all those to whom the entry which it is attempting to correct grants some right.

persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos. De lo contrario, se denegará la inscripción." Article 17.

-20-

Corrective action shall be inseparable from the dominion or real right from which it is derived.

In no case, may correction of the Registry impair the rights legitimately acquired by a third party who meets the conditions hereby established." 30 L.P.R.A. §2360[6].

Article 151 of the Mortgage Law provides:

"Errors made by the Registrar while making an entry may be rectified, provided they do not affect the rights of registered titleholders, either automatically or at the request of the interested party, provided the instrument motivating the action is at hand.

When rectification might affect the rights of registered titleholders, their consent or a judicial resolution ordering the rectification of entries shall be required." 30 L.P.R.A. §2502[7].

---

[6] The court notes that the equivalent sections in the Real Property Registry Act of Article 110 of the prior Mortgage Law are Articles 211 and 212 which are very similar to Article 110. Article 211 of the Real Property Registry Act states the following in the Spanish language:

"Por inexactitud del Registro se entiende todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral. Para corregir las inexactitudes se rectificarán los asientos de conformidad con este Título. En ningún caso la rectificación del Registro perjudicará los derechos legítimamente adquiridos por un tercero que reúna las condiciones fijadas en esta Ley."Article 211.

Article 212 of the Real Property Registry Act states the following in the Spanish language:

"La rectificación del Registro podrá ser solicitada por el titular del dominio o derecho real que no esté inscrito, que lo esté erróneamente, o que resulte lesionado por el asiento inexacto.

La rectificación se practicará con arreglo a las siguientes normas:

1. Cuando la inexactitud surja por no haber tenido acceso al Registro alguna relación jurídica inmobiliaria, la rectificación se hará:
   a. Por la inscripción del título procedente, si ello es posible,
   b. Por reanudación del tracto sucesivo, y
   c. Por resolución judicial que ordene la misma.
2. Cuando la inexactitud deba su origen a la extinción del algún derecho inscrito o anotado, la rectificación se hará mediante la correspondiente cancelación.
3. Cuando la inexactitud tenga lugar por defecto o error de algún asiento, se rectificará el Registro, según lo establecido en este título.
4. Cuando la inexactitud proceda de la falsedad, nulidad o defecto del título que motivó el asiento por cualquier otra causa no especificada anteriormente, la rectificación requerirá el consentimiento del titular afectado por ella o, a falta del mismo, una resolución judicial.

En los casos en que haya de solicitarse judicialmente la rectificación, deberá presentarse la demanda contra todos aquéllos a quienes el asiento que se trata de rectificar conceda algún derecho." Article 212.

[7] The court notes that the equivalent section in the Real Property Registry Act of Article 151 of the prior Mortgage Law is Article 214. Article 214 of the Real Property Registry Act states the following in the Spanish language:

"Los errores cometidos por el Registrador al extender un asiento podrán ser corregidos, siempre que no afecten derechos de titulares inscritos, bien de oficio o a solicitud de parte interesada, y siempre que se tenga a la vista el instrumento o la imagen digital del instrumento que motivó la acción.

In order to correct the inaccuracy of the Property Registry due to lack of chain of ownership, either the consent of the registered titleholders whose rights might be affected from this correction is needed or a judicial resolution ordering the rectification of the requested entries. See 30 L.P.R.A. §2502 (Article 214 of the Real Property Registry Act).

In Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., 417 F. Supp. 2d at 223-224, the court, as part of its analysis of Section 108(a), stated that there are three (3) requirements under this particular section, which are the following: (i) "First, the applicable nonbankruptcy law must fix a period which the debtor may commence the action;" (ii) "Second, the debtor must file for bankruptcy before the expiration of that period;" and (iii) lastly, "the trustee must commence the action before expiration of the extension period." There is no statute of limitations for correction of errors regarding entries in the Property Registry pursuant to the b Real Property Registry Act. However, the essential element that is lacking is that the Debtor could have initiated this type of action, without standing in the shoes of a hypothetical judgment lien creditor for having a claim (right to payment and/or a right to an equitable remedy stemming from a breach of performance) as defined under section 101(5)[8]. Under nonbankruptcy law, the party with a claim would be the lending institution (the aggrieved party) that would be interested in recording the deed of donation (whose entry of presentation lapsed due to a notified defect which was not corrected) in order for there to be a successive chain of

---

Cuando la rectificación pudiera afectar derechos de titulares inscritos se exigirá el consentimientos de éstos para corregir el error o una resolución judicial ordenando la corrección del asiento." Article 214.

[8] Section 101(5) provides: The term "claim" means-
    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. §101(5).

-22-

titleholders in the Property Registry in conformity with Article 17 of the Real Property Registry Act which is very similar to Article 57 of the prior Mortgage Law. A request to rectify or correct the Property Registry must be accompanied by the instrument motivating the action; namely the deed of donation. [9]

A request to rectify the Property Registry does not equate to a lien avoidance action because, as in this case, the lending institution (which is the aggrieved party) has to consent to the same or a judicial resolution ordering the rectification of entries must be obtained. The court finds that the Trustee, standing in the shoes of the debtor, does not have a claim in her own right under nonbankruptcy law. Therefore, section 108(a) is inapplicable in the instant case.

Moreover, at this juncture, the Debtor, who is no longer a debtor in possession, cannot file an action under section 544 due to the statute of limitations imposed by section 546(a). The Trustee, (standing in the shoes of the debtor) cannot file actions under section 544 due to the limitations of section 546(a), and thus cannot assert the status (rights and powers) of a hypothetical judgment lien creditor and avoid the mortgage lien.

The court finds that this adversary proceeding was initiated five (5) years and four (4) months (January 13, 2015) after the order of relief was entered. The same was premised upon the Trustee's strong arm powers to avoid a mortgage lien pursuant to 11 U.S.C. §544(a)(1) and 30 L.P.R.A. §2502. This avoidance action initiated by the Trustee is time-barred pursuant to section 546(a)(1)(A) as explained herein.

---

[9] The debtor under nonbankruptcy law would have benefitted by not requesting the correction of the entry because if the lending institution would have initiated a collection action and foreclosure proceedings, it would probably be only an action against the person, not against the *res,* or the real property due to lack of successive chain of titleholders. The lending institution would need to register the deed of donation and to be able to go against the real property and thus continue with the foreclosure proceedings or commence them again.

-23-

Conclusion

In view of the foregoing, the court grants TRM's *Amended Motion to Dismiss*. Thus, both Plaintiff's *Motion for Summary Judgment* and Defendant's *Cross Motion for Summary Judgment* have become moot.


SO ORDERED.

In San Juan, Puerto Rico, this 31st day of May, 2016.


*Lamoutte*
Enrique S. Lamoutte
United States Bankruptcy Judge